January 27, 1977

## 78-73   MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

### Hatch Act (5 U.S.C. § 7324)—Membership of White House Staff Member on Democratic National Committee

You have orally asked for our views as to whether a White House Staff member may lawfully continue to be a member of the Democratic National Committee. Insofar as we have been able to ascertain, our office has not previously been asked to examine such a question It is our conclusion that such membership would not violate any statutory restriction but that a question exists under applicable Standards of Conduct.

The only relevant statutory restriction of which we are aware is the Hatch Act. It provides in pertinent part:

(a)  An employee in an Executive agency or an individual employed by the government of the District of Columbia may not—

(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election; or
(2) take an active part in political management or in political campaigns. [5 U.S.C. § 7324(a).]

Under Civil Service Commission regulations, membership on the national committee of a political party is prohibited by subsection (2) of this provision. *See* 5 CFR 733.122(b)(1). However, the Hatch Act contains an exception providing that subsection (a)(2), quoted above, does not apply, *inter alia*, to "an employee paid from the appropriation for the office of the President." 5 U.S.C. §7324(d)(1).[1] Anyone whose salary is paid from funds appropriated for salaries and expenses of the White House Office under the Executive Office Appropriations Act of 1977, 90 Stat. 966, is covered by this exception, and his membership on the Democratic National Committee would therefore not be in violation of the Hatch Act.

---

[1]The exception does not extend to the prohibition in subsection (a)(1) against the use of official authority or influence for the purpose of interfering with or affecting the result of an election.

In addition to the statutory restriction, the propriety of membership on the Democratic National Committee should be considered in light of the Standards of Conduct applicable to agencies in the Executive Office of the President. *See* 3 CFR, Chapter I, Part 100.[2] "Agency" is defined to include the White House Office. 3 CFR 100.735-2(a). The Standards of Conduct were issued in compliance with Executive Order 11222, 3 CFR 306 (1965), and Civil Service Commission regulations implementing that order. *See* 5 CFR, Part 735.

Outside activities of employees of the Executive Office of the President are specifically governed by 3 CFR 100.735-15. Subsection (a) of this provision states that an employee may not engage in any outside activity "not compatible with the full and proper discharge of the duties and responsibilities of his Government employment." However 3 CFR 100.735-15(d)(2) provides that nothing in section 100.735-15 or 100.735-14 (dealing with the acceptance of gifts, gratuities, and entertainment) precludes an employee from "[p]articipation in the activities of national or State political parties not proscribed by law." The reference to political activities proscribed by laws is to the Hatch Act, discussed above. *See* 3 CFR 100.735-22(o). Because the Hatch Act does not prohibit a person employed in the White House from being a member of the Democratic National Committee, such membership is not prohibited by the regulations governing outside activities and receipt of gratuities either.

The exception in the regulations just discussed, permitting certain political activities, does not apply to other provisions of the Executive Office's Standards of Conduct. One other section of the Standards of Conduct that should be considered is 3 CFR 100.735.4(c), which provides:

> An employee shall avoid any action, whether or not specifically prohibited by this subpart, which might result in, or create the appearance of:
>
> (1)   Using public office for private gain;
> (2)   Giving preferential treatment to any person;
> (3)   Impeding Government efficiency or economy;
> (4)   Losing complete independence or impartiality;
> (5)   Making a Government decision outside official channels; or
> (6)   Affecting adversely the confidence of the public in the integrity of the Government.

These standards are necessarily general and are difficult to apply with precision in any particular case. However, it may be suggested that membership of a person employed in the White House on the national committee of a political party could give rise to problems of appearances under a number of these subsections.

The public no doubt expects persons on the President's staff to be political to the extent of being loyal to the President's policies and partisan endeavors. But

---

[2]The Standards of Conduct were previously codified in Chapter V of 3 CFR. *See* 40 F.R. 24993 (1975).

it can be supposed that the public at the same time expects a certain independence of the President's top advisers that could be, or at least appear to be, compromised by a close official connection to partisan political activities. In the language of the regulation just quoted, membership on the national committee of a political party might perhaps engender the appearance of "giving preferential treatment" to certain groups or "losing complete independence or impartiality" in one's official duties and thereby "affecting adversely the confidence of the public in the integrity of the Government." This appearance might result from the possibility that the individual would be in a position to influence governmental decisions unduly so as to favor the policy or institutional interests of the Democratic Party as opposed to the Republican Party or other groups[3] or that he would favor the Democratic Party's interests rather than the President's if a difference of opinion developed between the two. Moreover, membership of a White House staff member on the committee could conceivably give rise to the impression that important governmental decisions were being made by the committee rather than the White House, and therefore that they were being made "outside official channels."

The decision on a question of appearances such as this necessarily depends to a certain degree on the public's perception of an employee's conduct, and for this reason it cannot be said with certainty that problems of appearances will arise under the Standards of Conduct. Nevertheless, we believe that these potential problems of appearances should at least be considered. However, the authoritative construction of the regulations we have discussed in the present context is ultimately a matter for the appointing official.

LEON ULMAN
*Deputy Assistant General Counsel*
*Office of Legal Counsel*

---

[3]For example, if the individual were employed in the White House Personnel Office, there could be an appearance that the Democratic National Committee would have more influence in selecting persons to fill important Government posts than might otherwise be true. Also, if the individual took an active interest in certain Government grants or contracts, there could be an appearance that he would favor applicants with ties to the Democratic Party or its National Committee.